# SACCO & FILLAS LLP

31-19 Newtown Ave., 7ᵗʰ Floor          Ph: 718-269-2207
Astoria, New York 11102          OAlvarado@SaccoFillas.com

April 19, 2024

**VIA ECF**
Hon. Analisa Torres
United States District Court
Sothern District of New York
500 Pearl Street
Courtroom 15D
New York, New York 10007-1312

> Re:       *Escuted v. Dermaclinic New York LLC, et al*
> CASE #:    1:22-cv-10685-AT

Dear Judge Torres,

      This office represents Plaintiff Kathleen Escuted (hereinafter "Plaintiff") and together with Defendants' Counsel, we respectfully submit the instant request that the Court approve this settlement between Plaintiff and Defendants in this wage and hour case.

## 1. Exhibits

> Ex. A – Settlement Agreement;
> Ex. B – Damages Calculation based on Complaint; and,
> Ex. C – Attorney's bill for fees and costs.

## 2. Procedural History

      This case was originally filed by Plaintiff on December 19, 2022, asserting claims against Defendants to recover unpaid minimum wage, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), as well as under the New York Labor Law § 190, et seq. ("NYLL"), in addition to a notice and recordkeeping violation and failure to pay timely wages under NYLL. Plaintiff also sought liquidated damages, statutory damages, interest, and attorneys' fees and costs under the NYLL. On March 31, 2023 , Defendants filed their Answer and Affirmative Defenses to the Complaint, denying all of Plaintiff's claims.

## 3. Factual Allegations

      According to the Complaint, Plaintiff worked at Defendants' clinic as a medical aesthetician from June 24, 2022, to August 19, 2022. ECF No. 1. Plaintiff's claims arise from allegations that she was paid bi-weekly despite being a "manual worker" under the New York Labor Law, was not paid an extra hour for working more than 10 hours a day, and was not compensated for her time worked between August 15, 2022 to August 19, 2022 in the amount of $875. *Id.* Additionally, Defendants did not provide the Plaintiffs required notices and statements during each pay period as required by the Wage Theft Prevention Act. *Id.*

Defendants filed their Answer to the Complaint and affirmative defenses on March 31, 2023. ECF No. 23. Defendants denied that Plaintiff performed manual work, owed her any wages, and stated they provided the required notices and statements. ECF No. 23.

Although Defendants continue to take the position that Plaintiff is not owed anything, all parties acknowledge that they face risks of not being able to prevail on some or all their claims and/or defenses if this case were to proceed to trial.

## 4. Settlement Agreement

The Settlement Agreement, attached hereto as Exhibit A, requires Defendants to pay nine thousand dollars ($9,000.00) ("Settlement Sum") to resolve the case, but without any admission of liability. After attorneys' fees and expenses, Plaintiff will receive $4,480.94 of the total Settlement Sum.

Pursuant to the Settlement Agreement, Defendants will pay the Settlement Sum in one installment in one check to Plaintiff for $4,480.94, and for which an IRS Form 1099-MISC will be issued to Plaintiff ; and one check to Sacco & Fillas LLP in the amount of $4,519.06 representing attorney's fees and costs. The check is to be provided thirty days after approval of the settlement, and are to be held in escrow until the appropriate Payment Due Date outlined in the Settlement Agreement. Exhibit A, ¶¶ 3.4-3.5.

In the event of default and Defendants' failure to cure, Plaintiff shall have the unqualified right to enter judgement using the Confessions of Judgment affixed to the Settlement, in the amount of eighteen thousand dollars ($18,000.00). Exhibit A.

The Agreement in this case contains a release by Plaintiff of wage-related claims under the FLSA , the NYLL, WTPA, and any other statutory or common law wage claims that arose on or prior to the Settlement Agreement. *See* Exhibit A ¶4. The release does not include any wage and hour claims after execution of the Settlement and any non wage and hour claims. *See Id.* This limited release is identical to release provisions only limited to wage and hour claim. *See Perez v. Pearl River Pastry, LLC*, 2022 WL 14757824, at *2 (S.D.N.Y October 15, 2022) (Krause, M.J.) ("The settlement agreement also contains a release that is appropriately limited to FLSA claims asserted in this action and related FLSA claims that could have been asserted.")

Finally, the Agreement contains no non-disparagement or similar provision, allowing for the remedial purposes of the FLSA and NYLL to be in full effect and allowing for the free spread of information to other workers.

## 5. The Court Should Approve the Settlement of Plaintiff's FLSA Claims as Fair and Reasonable and Dismiss the Action with Prejudice

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. *Id.* "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013)

(*quoting Garcia v. Bae Cleaners Inc.,* No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012)). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

> "(1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

As set forth more fully below, the Parties respectfully submit that this settlement is fair, reasonable, and the product of arm's length negotiations. For these reasons and those set forth in further detail below, the settlement should be approved. Therefore, the parties respectfully request that this Court finds that the settlement amount is fair and reasonable.

Lastly, the release in this Agreement applies only to wage and hour claims in existence before the Settlement Agreement, not applying to such claims in existence after the Agreement and any non-wage and hour claims. A very limited release that courts have approved. *See Perez,* 2022 WL 14757824, at *2.

### 5.1.  Plaintiff's Estimate of the Full Anticipated Recovery if Plaintiff Had Received a Favorable Outcome at Trial

Plaintiff's Counsel calculates Plaintiff's highest possible damages to be $14,891.63 based on the allegations in the Complaint, not including attorney's fees and costs. See Exhibit B, Damage Calculations based on Complaint. The settlement amount of $9,000.00 is fair and reasonable in light of the numerous litigation risks discussed below. This is more than the amount of unpaid and untimely paid wages originally owed to her, and without the risk of the jury believing some or all of Defendants' defenses.

Plaintiff's total damages calculations include:

1. Total unpaid and untimely wages:        $7,000.00
2. Liquidated damages on wages:            $6,125.00
3. Prejudgment interest:                   $966.63
4. Wage Theft Protection Act Damages:      $7,800.00
5. Credited Bi-Weekly Pay:                 $(7,000.00)

After attorneys' fees and costs, Plaintiff will receive $4,480.94 for the release of her wage and hour claims.

### 5.2. <u>Bona Fide Disputes and Other Issues that Support Accepting the Settlement Agreement</u>

Defendants refute Plaintiff's claims of unpaid wages. Specifically, Defendants argue that Plaintiff was a manual worker or that they owe her a weeks pay. If this litigation were to proceed and the Court or jury credited Defendants' testimony, then Plaintiff's damages would be significantly reduced, or even completely erased.

An important factor in settlement negotiations was the avoidance of litigation burdens and expenses. If this case were to proceed, it would consume significant amounts of time and resources and demand substantial judicial resources. A trial would be costly for all Parties and could lead to the depletion of the resources used to resolve this matter. Realistically, if the litigation were to proceed, Plaintiff will not be able to recover more than the present negotiated amount.

Given the attendant risks of litigation, and the fact that he stands to receive more than what he would have received at trial, this settlement allows for Plaintiff to recover a significant amount without undergoing any risks at trial.

### 5.3. <u>Description of Settlement Negotiations</u>

Counsel engaged in extensive arm's length and vigorous negotiations on behalf of the Parties. The Parties' attorneys are competent and experienced in wage and hour matters.

Settlement of this matter required significant expenditure of time and effort, including various discussions with Plaintiff, mediation, a pre-settlement conference, the creation and subsequent review and discussion of damage calculation spreadsheets, and the negotiation of the terms of the Agreement including the confession of judgment from all Defendants.

The extensive negotiations performed in this matter confirm that there was no collusion or fraud and that the Settlement Amount is the product of fair and reasonable negotiations.

### 5.4. <u>Amount of Plaintiff's Attorney's Fees and the Basis for the Claimed Amount</u>

In accordance with the retainer agreement with Plaintiff, Plaintiff's counsel requests 33.3% of the total settlement amount before reimbursements of costs, which amounts to $3,000.00 in fees. As for costs, the costs of this action are itemized in the Attorney Bill, attached hereto as Exhibit C, amounting to $1,519.06 for the entirety of the case. See Exhibit C, Attorney Bill. This and the fee amounts to $4,519.06, an amount that is presumptively fair. *See Matter of Lawrence*, 24 N.Y.3d 320, 339 (2d Cir. 2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 NGG VMS, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"); *Karic v. Major Automotive Companies, Inc.*, 2016 WL 1745037 at *8 (E.D.N.Y. April 27, 2016)("Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund.") Furthermore, as the proposed attorneys' fees are "consistent with a commonly approved percentage, there are no opt-in plaintiffs, the case is not a [certified] collective action, and the attorney's fee award is based on an agreement between Plaintiff[s] and counsel," the fee should be approved as reasonable. *Alonso v. LE Bilboquet NY, LLC*, No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017).

The percentage method provides a powerful incentive to attorneys for plaintiffs in contingency fee FLSA cases to obtain the highest possible settlement amount for their clients and to avoid unnecessary litigation in an effort to build up a lodestar. See *Hyun*, 2016 U.S. Dist. LEXIS 39115, *7 (S.D.N.Y. Mar. 24, 2016) ("[T]he Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement,' is appropriate") (quoting *McDaniel v. City of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010)).

Our firm has worked on this matter without compensation of any kind to date and our fee has been wholly contingent upon the result achieved.

### 5.5. <u>Reasonableness of Fee Amounts</u>

Here, Plaintiff's Counsel's fee request is reasonable in light of the success in settling this matter. The time expended was necessary to obtain the results achieved. "The hourly rates used in making a fee aware should be 'what a reasonable, paying client would be willing to pay.'" *Mills v. Cap. One, N.A.,* No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *11 (S.D.N.Y. Sept. 30, 2015). "In determining a reasonable hourly rate, the court should not only consider the rates approved by other cases in the District, but should also consider any evidence offered by the parties." *Farbotko v. Clinton Cty.*, 433 F.3d 204, 208-09 (2d Cir. 2005). Unlike many other members of the FLSA Plaintiffs' Bar, Plaintiffs' Counsel regularly represents both employers and employees in wage and hour litigations. The firm's defense clients actually pay for the firm's legal services at each attorney's full hourly rate, which are the rates used to calculate the lodestar here. *Lora v. J.V. Car Wash, Ltd.,* No. 11CIV9010LLSAJP, 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015) ("ADK's requested rates are the amounts that [both attorneys] actually charge to their hourly-paying clients in other employment matters.").

### 5.6. <u>Plaintiff's Counsel's Qualifications</u>

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Guzman v. Joesons Auto Parts*, No. 11 Civ. 4543, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) (citations omitted). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's past experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for plaintiff. Id. (citations omitted).

Here, the $9,000.00 recovery is a fair amount, taking into account Defendants' arguments, and prior payments of unpaid wages.

Clifford Tucker, Esq., of Sacco & Fillas LLP has significant experience prosecuting, defending, and settling wage and hour actions and is well-versed in wage and hour law.

Clifford Tucker, Esq., is a trial attorney licensed in New York and New Jersey. He practices employment and personal injury law at the Law Office of Sacco & Fillas LLP. Mr. Tucker focuses on representing clients in matters related to minimum wage, overtime, spread-of-hours, the Wage Theft Protection Act, and retaliation under the federal Fair Labor Standards Act, New York Labor Law, and the implementing regulations of federal and state wage and hour laws. Additionally, he handles discrimination and harassment actions, has provided representation for civil servants in

administrative proceedings, and defended employers at the New York Department of Labor and arbitrated contractor disputes. Mr. Tucker serves clients from various industries, including hospitality, construction, and civil service. His representation extends to the United States District Courts for the Southern and Eastern District of New York, the New York State Supreme Court, the New York State Division of Human Rights, the New York City Commission on Human Rights, the New York State Department of Labor, and administrative proceedings. Mr. Tucker also represents clients who have been injured in accidents such as construction injuries, motor vehicle accidents, pedestrian knockdowns, and premise cases involving slips, trips, and falls. Mr. Tucker has taught Continuing Legal Education classes on case preparation, investigation, negotiation, and discovery. Mr. Tucker also taught the "Basic Wage & Hour Rules: Spotting Red Flags" Continuing Legal Education class at the Injured Workers Bar Association 2024 Winter CLE. Clifford Tucker, Esq., also wrote and published "Introduction to the Federal and New York State Wage and Hour Laws" at the IWBA. *See Gonzalez v. Scalinatella, Inc.,* 112 F. Supp. 3d 5 (S.D.N.Y. 2015) ($450 per hour for a senior law firm attorney in FLSA type cases); *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461 WHP JLC, 2014 WL 4207106, at *14 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted,* No. 13CV461, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) ("fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases"); *Almond v. PJ Far Rockaway, Inc.*, No. 1:15-CV-06792-FB-JO, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) ("attorney's fees , like other goods and services, increase in cost with inflation").

Oscar Alvarado, Esq., of Sacco and Fillas LLP has four years of experience prosecuting and settling wage and hour actions and is well-versed in wage and hour law.  Mr. Alvarado represents clients in matters related to minimum wage, overtime, spread-of-hours, the Wage Theft Protection Act, and retaliation under the federal Fair Labor Standards Act, New York Labor Law, and the implementing regulations of federal and state wage and hour laws. Additionally, he handles discrimination and harassment actions. Mr. Alvarado serves clients from various industries, including hospitality, construction, and civil service. His representation extends to the United States District Courts for the Southern and Eastern District of New York, the New York State Supreme Court, the New York State Division of Human Rights, and the New York City Commission on Human Rights.

**6.** **Conclusion**

For the foregoing reasons, the parties respectfully request that the Court grant the motion for approval. The settlement in this case is fair and reasonable and should be approved by the Court.

We thank the Court for the time and attention devoted to this matter.

Respectfully submitted,

By:         */s/ Oscar Alvarado*
                Oscar Alvarado, Esq.,